SEALED   FILED

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

FILED

SEP - 9 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                 DEPUTY CLERK

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. |
| | ) |
| Dezmaighne McClain | ) |
| | ) |
| | ) 2:19 - MJ · 1 5 0        AC |
| _____ | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____ July 15 and 30, 2019 ____ in the county of ____ Sacramento ____ in the

Eastern ____ District of ____ California ____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:

(see attachment)

☒   Continued on the attached sheet.

_____
*Complainant's signature*

FBI Special Agent Russell Custer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____ 9 / 9 / 19 ____

_____
*Judge's signature*

City and state: _____

Allison Claire, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT OF FBI SPECIAL AGENT RUSSELL CUSTER

I, Russell Custer, being duly sworn, hereby depose and state:

## PURPOSE

1. This Affidavit is made in support of a complaint and arrest warrant for Dezmaighne MCCLAIN, date of birth December 9, 1990, hereinafter MCCLAIN.  As detailed below, I submit that there is probable cause to believe that MCCLAIN has committed violations of 18 U.S.C. § 922(g)(1), Possession of Firearm by a Prohibited Person (Felon), in the Eastern District of California.

The complaint charges violations of 18 U.S.C. § 922(g)(1); however, based on the facts set forth below, there is also probable cause to believe that evidence concerning violations of 18 U.S.C. § 922(a)(1)(A), will be found in the identified search locations.  That statute prohibits "any person, except a licensed importer, licensed manufacturer, or licensed dealer, [from] engag[ing] in the business of importing, manufacturing, or dealing firearms, or in the course of such business to ship, transport, or receive any firearm in interste or foreign commerce."

2. This Affidavit is also made in support of a search warrant for:
   a. A-1 - 3373 Lerwick Road, Sacramento, California, hereinafter the "Target Residence," which is the suspected residence of MCCLAIN.  This residence is a suspected storage location for firearms, as more fully described below and in Attachment A-1.
   b. A-2 – Black 2012 Cadillac CTS with California temporary license plate AA92G03 and VIN 1G6DC5E54C0104458, hereinafter the "Target Vehicle," which is known to be recently purchased by MCCLAIN.
   c. A-3 – Cellular Telephone Device, 916-904-2404, hereinafter the "Target Phone," which is known to be utilized by MCCLAIN.
   d. A-4 – The search of the body of Dezmaighne MCCLAIN. MCCLAIN is known to carry firearms and cellular telephone(s).
   e. I assert that there is probable cause to believe that the residence, vehicle, phone, and body of MCCLAIN described in Attachment A-1, A-2, A-3, and A-4 contains evidence, fruits, proceeds, or instrumentalities of violations 18 U.S.C. § 922(g) (possession of firearm by a prohibited person) and 18 U.S.C. § 922(a)(1). The evidence, fruits, and instrumentalities to be searched for and seized are more fully described in Attachment B.

2

## **BACKGROUND**

3. I am a special agent with the Federal Bureau of Investigation (FBI).  I entered on duty at the FBI Academy in Quantico, Virginia on October 24, 2010.  I am currently assigned to the FBI's Sacramento Division, Violent Crime Safe Streets Task Force. I have been assigned to this squad since 2011.

4. During the course of my employment as an FBI Special Agent, I have participated in numerous criminal investigations.  I have also participated in numerous investigations involving the use of federal and state search warrants to collect evidence that documents the activities of criminals and criminal organizations in both the manufacturing and distribution of controlled substances and weapons.  To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources including physical and electronic surveillance, various types of infiltration (including undercover agents, informants, and cooperating sources), pen register and trap and trace devices, GPS and telephone tracking devices, trash covers, mail covers, pole cameras, stationary video recording vehicles, and audio/video recording devices.

5. Through these investigations, my training and experience, and conversations with other agents and law enforcement personnel, I have become familiar with the methods used by criminals to safeguard controlled substances and weapons, to distribute and transport controlled substances and weapons, and to collect and launder related proceeds.

6. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

7. Throughout this Affidavit, the below-listed set of terms commonly used by law enforcement may be used to describe some of the techniques and tactics used to obtain the probable cause in this investigation:

   a. <u>Controlled Buy</u> – During a controlled illicit drug or firearm buy, law enforcement officers search a Confidential Source's (CS's) vehicle and person before and after the buy. This is done to ensure that no additional money, illicit drugs and/or weapons are taken to the buy or brought back from the buy. During the buy, the CS is generally provided with an audio and/or video recording device to record the transaction and a transmitter to allow law

enforcement officers to monitor the transaction and execute a rescue if the CS's safety is compromised. All of the illicit firearm buys documented in this Affidavit were controlled buys.

b.  <u>Staging Area</u> – The term "staging area" refers to the pre-determined location, chosen by law enforcement, to prepare the CS to conduct a controlled buy, and often, return from the buy.  At the staging area, the CS is provided with electronic monitoring equipment, buy funds and is briefed regarding the objectives of the operation and safety considerations.  The CS's vehicle and person are searched for weapons, money, and/or contraband at the staging area.

c.  <u>Buy Funds</u> – The term "buy funds" refers to the funds provided by law enforcement to the CS to successfully conduct the controlled purchase of drugs and/or firearms.

d.  <u>Firearms Trace</u> - The tracking of a recovery crime gun's history, from its source (manufacturer/importer) through the chain of distribution (wholesaler/retailer), to the first non-licensed purchaser of a firearm.

e.  <u>Federal Firearms Licensee (FFL)</u> - Any person, partnership or business entity holding a valid license issued by the Bureau of Alcohol, Tobacco and Firearms and Explosives (ATF) under the authority of 18 U.S.C. Chapter 44 that allows them or their employees to "engage in the business" of dealing, manufacturing, importing or repairing firearms.  This term also includes those persons who are pawnbrokers dealing in firearms.  By law, all FFLs must keep records of their firearms transactions.

f.  <u>Federal Firearms Licensing Center (FFLC)</u> - An ATF entity which receives and processes requests for FFLs and maintains information regarding all active licenses, active license addresses, responsible persons associated with the license, d.b.a. (doing business as) names, corporate names, licensee telephone numbers, FFL photographs, fingerprints for recent applicants or renewals, etc.  The FFLC can be queried through ATF's Federal Licensing System (FLS).

8. Because this Affidavit is submitted for the limited purpose of establishing probable cause for the requested criminal complaint, arrest warrant, and search warrant, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause.

4

9. This Affidavit is based upon my own personal knowledge and the knowledge of other law enforcement officers involved in this investigation. Where I describe statements made by other people (including other special agents and law enforcement officers), the statements are described in sum, substance, and relevant part. Similarly, where I describe information contained in reports and other documents or records in this affidavit, this information is also described in sum, substance, and relevant part.

## OVERVIEW OF INVESTIGATION

10. The Federal Bureau of Investigation's (FBI's) Safe Streets Gang Task Force (SSTF) is responsible for investigating gang activity, including firearms and drug offenses, in Northern California.

11. A review of Sacramento County jail records and parole records revealed that MCCLAIN was a validated gang member.

12. MCLAIN has several prior felony convictions. First, in 2011, MCCLAIN was convicted of a felony violation of California Health and Safety § 11378 (Possession of Controlled Substance for Sale) in Sacramento County. Second, in 2011, MCCLAIN was convicted of a felony violation of California Penal Code § 12021(A)(1) (Felon in Possession of a Firearm) in Sacramento County. Third, in 2011, MCCLAIN was convicted of a felony violation of California Penal Code § 211 (Robbery) and §245(A)(1) (Assault with Deadly Weapon) in Sacramento County and he received a sentence of eight years in prison.

13. This investigation included the use of a CS to conduct controlled firearms buys. The CS involved in this investigation was most recently opened as a FBI CS on June 5, 2019. CS was initially opened as a FBI CS in November of 2013 and has been utilized as a CS in multiple operations for multiple investigations since 2013. CS is a former Crip gang member. CS's primary motivation for working with law enforcement is monetary compensation. CS's criminal history includes felony convictions for voluntary manslaughter and participation in a criminal street gang, and a misdemeanor conviction for assault. During CS's cooperation with the FBI, no instances of dishonesty have been identified. CS's information has been reliable and often corroborated

## STATEMENT OF PROBABLE CAUSE

### July 15, 2019

14. On July 15, 2019, CS made contact with MCCLAIN in the lobby of California State Parole North Sacramento Office in North Highlands, California, hereinafter "parole office." The CS was provided with transmitting and audio recording devices. The CS was instructed to talk to MCCLAIN about firearms and whether MCCLAIN was involved in the distribution of firearms.

15. MCCLAIN arrived at the parole office in a black Ford Crown Victoria with California License Plate 6KCJ697, which was registered to MCCLAIN's mother Regina Brown, 3373 Lerwick Road, Sacramento, California. (This address – 3373 Lerwick Road – is also the address provided to California State Parole by MCCLAIN as his current address.) Minutes later, CS entered the parole office and started a conversation with MCCLAIN. During the conversation, the CS and MCCLAIN exited the parole office to have a cigarette. During the conversation, MCCLAIN provided his cellular telephone number: 916-904-2404. This was the cellular telephone number given by MCCLAIN to California State Parole as his current telephone number. The CS and MCCLAIN discussed work, gang life, and firearms. MCCLAIN brought up buying guns, stated that he was buying guns from a white boy, and that he currently had two firearms. The CS asked MCCLAIN if he had any guns for sale. MCCLAIN replied that he had a Smith and Wesson that he would sell for $600. As MCCLAIN was leaving the parole office, CS told MCCLAIN that he was interested in buying the gun and would call MCCLAIN when done at the parole office.

16. Under FBI surveillance, MCCLAIN departed the parole office driving his black Ford Crown Victoria. MCCLAIN stopped at a store and drove to Target Residence. The CS returned to the staging area. At the staging area, the recording devices and transmitter were recovered.

17. At the staging area, the CS made a consensually recorded telephone call with MCCLAIN at 916-904-2404. The CS stated that the CS wanted to get the gun. MCCLAIN directed the CS to come to the house. MCCLAIN then sent a text, "3373 lerwick road."

18. The CS was provided a transmitter and audio and video recording devices, and buy funds. The CS and CS's vehicle were searched prior to meeting with MCCLAIN. The surveillance team maintained visual observation of the CS and CS's vehicle. The CS drove to the Target Residence.

19. At the Target Residence, MCLAIN met the CS outside and invited the CS inside the gate to a side patio. MCCLAIN pulled a black pistol from his right pants pocket and handed it to the CS. The CS handed MCCLAIN $600. MCCLAIN stated that he also had a .40 pistol, but needed more than $600 for it. The CS then departed area.

20. The CS returned to the staging area while under visual observation by the surveillance team. At the staging area, the recording devices, transmitter, and firearm were recovered. CS and CS's vehicle were searched for weapons and/or contraband with negative results.

21. The firearm was a black Smith and Wesson M&P 9 Shield pistol with serial number HUA0677. The firearm was not loaded. A NCIC check revealed the firearm was reported stolen to the Butte County Sheriff's Office on December 13, 2018. Additional investigation revealed that this gun was manufactured in Springfield, Massachusetts.

### July 30, 2019

22. Following the firearm purchase, the CS was instructed to maintain contact with MCCLAIN and attempt to arrange additional firearm purchases. Between July 22 and July 30, 2019, the CS made multiple consensually recorded telephone calls and text messages with MCCLAIN. MCCLAIN agreed to sell the CS a XD40 pistol for $700 on July 30, 2019, at the Target Residence.

23. On July 30, 2019, CS conducted a controlled firearm buy from MCCLAIN in Sacramento, California. Prior to departing the staging area, the Source was provided a transmitter, audio and video recording devices, and buy funds. The CS and CS's vehicle were searched prior to meeting with MCCLAIN. The surveillance team maintained visual observation of the CS and CS's vehicle. The CS drove to the Target Residence

24. The CS and CS's vehicle were searched for weapons and/or contraband with negative results. CS was provided with audio and video recording devices and buy

7

funds. FBI surveillance teams maintained visual observation of CS to and from the buy location.

25. At the Target Residence, MCCLAIN met the CS outside and invited the CS inside the gate to a side patio. MCCLAIN walked to a table to the rear of the yard. On the table was a tan box. MCCLAIN pulled a key from his pocket and opened the box. MCCLAIN pulled a pistol out of the box. MCCLAIN handed the CS the pistol. The CS inspected the weapon. The CS handed the pistol back to MCCLAIN, who secured it in the tan box. Also inside the tan box was loose ammunition. The CS gave $700 to MCCLAIN. The CS left with the tan box and departed the area.

26. CS returned to the staging area while under visual observation by the FBI surveillance team. At the staging area, the recording devices, transmitter, and tan box were recovered. CS and CS's vehicle were searched for weapons and/or contraband with negative results.

27. The firearm was a black and grey Springfield Armory XD40 pistol with serial number US408189. The firearm was not loaded. A NCIC check revealed the firearm was not registered or stolen. Additional investigation revealed that this gun was manufactured in Croatia. Also inside the tan box were a .40 magazine and 271 rounds of .40 ammunition.

28. A license check conducted by the Bureau of Alcohol, Tobacco, and Firearms (ATF) confirmed that MCCLAIN did not have a federal firearms license to distribute firearms.

### August 10, 2019

29. On August 10, 2019, a picture and message was posted on Facebook social media site. The picture and message revealed that MCCLAIN purchased a black Cadillac CTS.

### August 18, 2019

30. On August 18, 2019, MCCLAIN sent a picture by text message from Target Phone to CS of an AR-15 style weapon and texted "you want this for 2000." MCCLAIN also texted "we can meet up in Fresno."

**August 19, 2019**

31. On August 19, 2019, MCCLAIN sent a picture by text message from Target Phone of a chrome revolver and texted "got this too."

**August 19, 2019 & August 29, 2019**

32. On August 19, 2019, FBI surveillance observed a black Cadillac CTS parked on the street in front of the Target Residence. Again on August 29, 2019, FBI surveillance observed a black Cadillac CTS parked on the street in front of Target Residence. The Cadillac had California temporary license plate AA92G03. A California Department of Motor Vehicles check showed the vehicle was registered to MCCLAIN and Regina Brown, MCCLAIN's mother, at the Target Residence. It revealed the VIN of the Target Vehicle was 1G6DC5E54C0104458.

## BACKGROUND ON VIOLATIONS OF FEDERAL FIREARMS LAWS

33. Based on my training and experience and that of other agents with more experience with whom I have spoken, I know that felons who possess and sell firearms use their vehicles as a means to transport the firearms they intend to sell to the location where the firearms are then sold to other unknown individuals. As such, I know that firearms can be readily transported in vehicles. I observed Facebook posts that MCCLAIN purchased Target Vehicle after the sale of two firearms to CS.

34. Based on my training and experience and that of other agents with more experience with whom I have spoken, I know that individuals can utilize their homes, outbuildings and other types of storage mechanisms, including items such as RVs, as locations where they store can firearms. Based on my training, experience and conversations with more experienced agents, I know that individuals who buy and sell firearms need places to store those firearms prior to selling them and after acquiring them. During the July 30, 2019 controlled firearm purchase, MCCLAIN stored the firearm in a tan lock box. Based on my training and experience, I know that firearms can be stored in a variety of manners, including secured, for example, in a gun safe, or left unsecured.

35. Throughout the course of the investigation, MCCLAIN and the CS have communicated via telephone. MCCLAIN provided the CS with his cellular telephone, 916-904-2404, and they have communicated, among other methods, primarily via text message.

36. Based on my training and experience and that of other agents with more experience with whom I have spoken, I learned that felons who possess and deal in firearms use their cellular phones as a means to communicate with one another. These communications can occur verbally or in various forms of messaging. The contents of these communications can include, among other things, meeting times and places, potential firearms orders, potential buyers and sellers of firearms and they can identify other potential co-conspirators involved in the trafficking of firearms. Due to a phone's internet capability, it is possible to research gun store inventories or advertised specials, or to check online prices to determine the going market rate for a particular firearm. The purchase and sale of firearms via internet sites is now well-established with popular sites such as gunbroker.com and armslist.com serving as online marketplaces for firearms transactions. Moreover, individuals frequently use social media sites such as Facebook to connect with potential firearms purchasers and to orchestrate private sales.

37. Based on my knowledge, training and experience, I know that cellular telephones and digital devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on cellular telephones. This information can sometimes be recovered with forensic tools.

38. Data on digital devices like cellular telephones, tablets and computers can provide evidence of a file that was once on the device but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

39. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them and when.

40. The process required to identify the exact electronically stored information on an electronic device or storage medium is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

41. Further, in finding evidence of how a device was used, the purpose of its use, who used it and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

42. I also know based on my training, experience and conversations with other more experienced law enforcement personnel that, in addition to their cellular phones, felons who possess and deal in firearms, or who commit similar crimes, utilize computers and/or electronic storage devices to commit their crimes. Computers provide a means of searching the internet for information about firearms, checking prices, and determining which retailers and/or intermediary websites, such as gunbroker.com and/or armslist.com, have particular firearms for sale and for the best prices. Based on my training, experience and conversations with more experienced agents, I believe that in order for MCCLAIN to continue to acquire firearms without putting them in his name, MCCLAIN may use alternative re-sale methods to purchase these firearms, such as through gun shows, word of mouth and also potentially through electronic means on websites such as armslist.com and gunbroker.com.

43. Due to the foregoing information and experience, I submit that there is probable cause to believe that MCCLAIN's phone and any other phones, tablets, computers and electronic storage devices located in the Target Residence, Target Vehicle and the body of MCCLAIN will contain evidence concerning MCCLAIN's possession and sale of firearms. For that reason, this application seeks permission to seize and copy such phones, tablets, computers and electronic storage devices located in the Target Residence, Target Vehicle and on the body of MCCLAIN.

44. Based on the foregoing facts and investigation, I submit that there is probable cause to believe that the Target Residence, Target Vehicle, Target Phone and the body of MCCLAIN contain evidence concerning violations of 18 U.S.C. § 922(g)(1) and 922(a)(1). The evidence indicates that the Target Residence, Target Vehicle, Target Phone and the body of MCCLAIN are locations and instrumentalities that MCCLAIN used to feloniously possess and deal firearms without a license. Thus, I submit there is probable cause to believe that Target Residence, Target Vehicle, Target Phone and the body of MCCLAIN may contain fruits and evidence, or may constitute instrumentalities of the offenses described herein.

11

## REQUEST TO SEAL

45. This Affidavit contains information regarding potential targets, which if unsealed may jeopardize the very information sought to be gained by the search warrant. In light of the on-going nature of the investigation, and the likelihood that notice to above-identified individuals may cause them to destroy evidence or flee from prosecution, your Affiant requests that this Affidavit and the resulting Complaint, Arrest and Search Warrants be sealed on the Court's docketing system, with the exception of copies utilized by law enforcement officers participating in the investigation and a copy of the Search Warrant and an inventory of any items seized that will be left at the location of the execution of the Search Warrant. This Affidavit and the accompanying Complaint, Arrest Warrant, and Search Warrant will be unsealed upon the arrest of MCCLAIN.

## CONCLUSION

46. I hereby request that a complaint and arrest warrant be issued for Dezmaighne MCCLAIN, for a violation of U.S.C. § 922(g)(1) (possession of firearm by a felon) on or about July 15, 2019 and July 30, 2019.

///
///
///
///
///
///
///
///
///
///
///
///
///

47. Based on the foregoing, I believe that evidence of MCCLAIN's firearm possession and distribution may be found at the Target Residence, Target Vehicle, Target Phone and the body of MCCLAIN and described in Attachment A-1, A-2, A-3, and A-4. I hereby request that a search warrant be issued for the Target Residence, Target Vehicle, Target Phone and the body of MCCLAIN described in Attachment A-1, A-2, A-3, and A-4 for the items set forth in Attachment B based upon the aforementioned facts.

I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

RUSSELL CUSTER
FBI Special Agent


Sworn and Subscribed to me
on September 9 2019,


Hon. Allison Claire
United States Magistrate Judge


Approved as to form:

Michele Beckwith
Assistant United States Attorney

## ATTACHMENT A-1

### Target Residence to be Searched
3373 Lerwick Road, Sacramento, California



This warrant applies to the search of Target Residence, 3373 Lerwick Road in the City of Sacramento, Sacramento County, California. The residence is the Eastern side of a duplex building. It is a two bedroom, two bath, single-story building. The residence is grey with a damaged brown and black roof. The garage door is white and faces South. The number "3373" is attached to the right of the garage door in black numbers. The primary entrance to the residence is on the East side of the residence.

The search of the aforementioned location shall include ANY AND ALL attachments, including attics, basements, garages, safes, carports, outbuildings, trailers, appurtenances thereto, and all other areas within the curtilage and associated with residence.

14

### ATTACHMENT A-2

### Target Vehicle to be Searched
Black 2012 Cadillac CTS



This warrant applies to the search of Target Vehicle, a black 2012 Cadillac CTS with California temporary license plate AA92G03 and VIN 1G6DC5E54C0104458.

15

# ATTACHMENT A-3

**Target Phone to be Searched**
916-904-2404

This warrant applies to the search of Target Phone, 916-904-2404.

1

## ATTACHMENT A-4

2

### Body of MCCLAIN to be Searched

3

4

5   This warrant applies to the search of the body of Dezmaighne MCCLAIN. This warrant
6   does not include the search of any cavities or orifices of MCCLAIN.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

## ATTACHMENT B

### Items to be Seized

1.      To the extent that it constitutes fruits, evidence and instrumentalities of violations of Title 18 U.S.C. § 922(g)(1) (possession of a firearm by a felon) and Title 18 U.S.C. § 922(a)(1)(A), the Government is authorized to seize and to search the following items:

a. Any and all firearms.

b. Any firearm that does not have a lawful manufacturer stamp and serial number, any firearm or ammunition not legally possessed under 18 U.S.C. § 922(g) (e.g. the possessor is an illegal immigrant or felon), any unregistered firearm (where registration is required by Title 26 of the United States Code), and blanks of any kind (including AR-15 blanks).

c. Any items pertaining to or involved in the possession, manufacture, or distribution of firearms, including firearms.

d. Any tools and/or equipment associated with the manufacture of firearms, including but not limited to drills, drill presses, lathes, welding equipment, jigs, hack saws, power saws, templates, diagrams, instruction manuals, pamphlets, or other tutorial material regarding the manufacture of firearms.

e. Photographs developed and undeveloped and/or videotapes or DVDs/CDs of firearms, firearm transactions, firearm parts, large sums of money and/or co-conspirators and paperwork showing the purchase, storage, disposition, or dominion and control over any firearms, firearm parts, ammunition, or any of the items described in Attachment B.

f. Records relating to the acquisition and distribution and repair of firearms, firearms parts, tools and/or equipment associated with firearms, including ATF Forms 4473, books, receipts, invoices, notes, bills of sale, ledgers, and pay/owe sheets.

g. Personal telephone books, telephone records, telephone bills, address books, correspondence, notes, and papers containing names and/or telephone numbers that tends to establish communication between co-conspirators.

h. Seize and make digital copies of cell phones, tablets, laptops, desktops, computers, digital cameras, mobile communications devices, and electronic storage devices, such as hard drives and thumb drives to which MCCLAIN has access. Except specific telephones depicted in this search warrant, these items will not be digitally searched/examined except by a later Court-ordered search warrant authorizing digital search/examination of the contents of these items.

i. Evidence and records relating to the accumulation of proceeds derived from illegal firearms trafficking.

j. United States currency in excess of $2,000, including any and all financial records to facilitate the investigation of the laundering of illicitly obtained monies and/or other forms of assets, including United States currency acquired through the sales and/or trafficking of firearms.

k. Tax returns, pay stubs, financial documentation, receipts for firearm purchases/sales, documents evidencing the accumulation of income and disposition of earnings, including but not limited to firearm purchases.

l. Documentation evidencing the attendance at gun shows, including but not limited to ticket stubs, payments to gun shows, promotional materials and written and/or electronic correspondence with gun shows.

m. Rental or lease agreements for storage units, safety deposit boxes, other storage locations, keys, combinations, and/or access codes for them.

n. Indicia of occupancy, residency, and/or ownership of the items noted above and of the premises, including but not limited to, papers, correspondence, envelopes, postcards, bills, and registration documents.

o. Any safes, locked cabinets, and/or other secured containers and/or devices at the locations and in/on vehicles identified in Attachments A-1 through A-3 to which MCCLAIN access. Law enforcement shall be permitted to open such locked containers by force or through the use of a locksmith if necessary.

19